DECISION
This is an appeal from a final decision of the Coastal Resources Management Council dated September, 22 1993.[1] The Plaintiff-Apellant is Stanley J. Puchalski of Charlestown, Rhode Island. Jurisdiction in this Court is pursuant to R.I. G.L. § 42-35-15.
 TRAVEL OF CASE AND SUMMARY OF FACTS
In its decision, the Coastal Resources Management Council (hereinafter referred to as CRMC) denied Plaintiff's application for 1) a variance to the 75 foot coastal feature setback requirement and 2) for permission to build a three bedroom dwelling, an individual sewage disposal system (ISDS) and a 1000 gallon water holding tank on land designated as lot 48 on the Town of Charlestown tax assessor's map 9. The Plaintiff purchased the lot in 1984, at which time the seller disclosed to him that construction was not allowed without a CRMC permit. In 1987, Plaintiff applied to the CRMC for a Preliminary Determination (PD). During the PD, a CRMC staff engineer informed Plaintiff that the site required a 75 foot setback area, and that a variance would be required from CRMC in order to build within that setback area. The PD also informed the Plaintiff as to other restrictions on construction within a dune system pursuant to the Rhode Island Coastal Resources Management Program (CRMP) Section 210.1 and on the need for a Special Exception (Sec. 130) rather than a variance (Sec. 120) to those prohibitions. In November 1988, Plaintiff applied for a CRMC permit to build on his lot and for a variance to the 75 foot setback requirement. Plaintiff's actions did not address the special exception requirement.[2] After a period of inaction, the CRMC advised Puchalski that although he had not addressed the special exception requirements the matter was scheduled for a hearing. CRMC staff reports, dated from February 1992, characterize the site as an undeveloped dune on a developed barrier beach. Therefore, the CRMC maintained their initial PD assessment that Puchalski's application required a special exception. The CRMC staff also found that, regardless of the special exception, plaintiff also needed a variance from the 75 foot setback requirement.
The matter was heard before the Council in March 1992. At that time, counsel for Plaintiff stated that the CRMC should reclassify the dune as a developed dune and that Plaintiff was asking for a variance and not a special exception. CRMC staff maintained that the dune was undeveloped and required a special exception. The matter was remanded to a subcommittee for findings of fact as to whether the dune was developed or undeveloped, whether a variance or a special exception was required, and whether Puchalski met his burdens of proof for a variance or special exception. The subcommittee met on April 27, 1992, and heard evidence from Plaintiff and his witnesses and from CRMC staff. Prior to reconvening the subcommittee to formulate a written recommendation to the full Council, CRMC staff made an additional site visit to Plaintiff's lot. During the visit, CRMC staff discovered that recent storm damage had caused severe erosion to the property, confirming CRMC staff's concerns regarding erosion on the site. Accordingly, the CRMC chairman, at the request of the subcommittee chairwoman, directed the subcommittee to reconvene, over Plaintiff's objection, in order to take further evidence. CRMC staff submitted evidence and Puchalski presented rebuttal testimony. The hearing was then closed and the full Council remanded the issue to the subcommittee for a workshop. The subcommittee then formulated a recommendation denying the application. On September 14, 1993, the full Council voted to deny the application, setting forth 49 findings of fact and three conclusions of law. See Exhibit A.
 CRMC JURISDICTION
The CRMC was created by the legislature to regulate the use of coastal waters and structures situated near coastal waters. R.I. G.L. §46-23-1. The CRMC is given primary responsibility for the planning and management of Rhode Island's coastal region. R.I. G.L. § 46-23-6. In order to meet this objective, the CRMC may develop policies, programs and regulations concerning the State's coastal resources. The CRMC jurisdiction exists because Plaintiff's land is part of a barrier beach and contains a coastal feature (a dune). Plaintiff's land is also backed by a coastal pond, divided from the property by Charlestown Beach Road.
 STANDARD OF REVIEW
The review of a decision of the CRMC by this Court is controlled by the Administrative Procedures Act, R.I. G.L. 1956 § 42-35-15 (g), which states that:
 "The court must not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the CRMC so long as the CRMC presents credible findings of fact. Lemoine v. Department of Public Health, 113 R.I. 285, 291 (1974). Where evidence is clearly open to conflicting interpretations, the court must defer to the CRMC. DeStefanis v. Rhode Island State Board of Elections, 107 R.I. 625 (1970). Section 42-35-15(g) also precludes the reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence regarding questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support on the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and how it applies to the facts. WL 1526532, Town of Warren v. Coastal Resources Management Council, (R.I. Super. 1997); Carmody at 458. The Superior Court must examine whether any competent evidence exists in the public record to support the agency's findings. Rocha v. Public Util. Comm'n., No. 96-112-M.P., Slip. Op. At 7 (R.I., filed June 9, 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 ANALYSIS
Plaintiff contends that the decision of the CRMC should be reversed because of procedural errors of law, substantive errors of law, and clear errors of fact.
1. Procedural errors of law
Plaintiff argues that the CRMC violated Section 5.2.1 of its Management Procedures (CRMP) which states that:
"Section 5.2.1
 In the event an application or matter pending before this Council becomes a contested case as defined herein, the Council shall then schedule a public hearing before a duly authorized and appointed subcommittee on the matter. The subcommittee shall render a recommendation within thirty (30) days of the final hearing unless the Chairman of the Council extends such period."
Section 5.2.1 states that the thirty day requirement only applies after the final hearing. That hearing did not take place until August 19, 1993, when the subcommittee met in workshop (a move that Plaintiff's attorney agreed to) to formulate its recommendation. The subcommittee presented a recommendation to the full Council on August 24, 1993, 5 days after the final hearing and well under the 30 day maximum mandated by Section 5.2.1. The full Council voted to deny Puchalski's application on September 14, 1993. The final vote also came before the 30 day maximum, so that the CRMC not only met but exceeded the conditions of Section 5.2.1. Therefore, the Court is satisfied that the recommendation was timely in accordance with the Board's regulations.
The Court also notes that Plaintiff's own actions were the cause of a portion of the delays. The parties spent the time between November 1988, when Plaintiff first applied to CRMC for a building permit, and March 1992, when the first hearing on the matter was held, attempting to come to an agreement over two issues. Plaintiff insisted on filing for a variance, rather than for a special exception as CRMC requested. Plaintiff also objected to CRMC's designation of the site as undeveloped dune on a developed barrier beach. The CRMC finally scheduled a hearing in March 1992, only because the two parties had come to an impasse on these issues. Had Plaintiff filed for a special exception, the process could have been expedited. The Court also notes that counsel for Puchalski stated that he did not believe that CRMC was delaying the process. See August 10, 1993 transcript at 29. This conduct by Plaintiff clearly estops him from contending that he was denied due process because of any delays in the proceeding.
Plaintiff also argues that CRMC inappropriately reopened hearings on the matter.
CRMP 5.7 provides:
 "After the close of subcommittee hearing by the subcommittee chairman, the subcommittee may not reopen hearings unless the matter is referred back to the subcommittee from the full council or the chairman of the council. Any new evidence may be presented to the full Council at the full Council hearing."
At the end of the first hearing before the full Council on March 24, 1992, the matter was remanded to the subcommittee for factual findings as to whether the dune was developed or undeveloped. The taking of evidence from Plaintiff, his witnesses and from CRMC staff concluded on April 27, 1992.[3] At this point, CRMC staff made several additional site visits in preparation for their reports to be presented at the workshop. During the site visits, CRMC staff discovered new storm damage, which had caused severe erosion on the property. Therefore, the subcommittee reconvened on July 29, 1993, at the request of the subcommittee chairwoman and at the direction of the CRMC Chair. CRMC staff submitted evidence and Plaintiff offered rebuttal testimony. The hearing was then closed and followed by a scheduled subcommittee workshop. The subcommittee then issued its final report to the full Council. CRMC complied with Section 5.7. The hearings were reopened only after the CRMC Chair directed that the subcommittee reconvene. The CRMC staff presented its evidence at the July 29 hearing, while Plaintiff was given an opportunity to present his own evidence and testimony.
Plaintiff also contends that, because CRMC staff testimony was not sworn to, their comments could not properly be considered. More importantly, Plaintiff was given an opportunity to cross examine the staff. Therefore, there was no prejudice to Plaintiff, and staff comments were appropriately regarded as testimony.
Finally, the Plaintiff argues that the CRMC erred in refusing to consider Plaintiff's suggestion that the building plans include an Incinerator toilet rather than an ISDS. However, Plaintiff made this suggestion during the July 29, 1993 hearing. The July 29th suggestion was the sole mention of this alternative sewage proposal, and Plaintiff never attempted to amend his proposal or request that the CRMC consider issues relating to such a proposal.[4]
2. Substantive errors of law
Puchalski argues that CRMP regulations do not allow the CRMC to regulate undeveloped dunes separately from developed barrier beaches, even when the dune is located on the barrier beach. Sections 210.1 Coastal Beaches and Dunes, 300.2 Filling, Removing, or Grading of Shoreline Features and 210.2 Barrier Beaches were all in effect at the time the matter was heard. Section 210.2 defines barrier beaches and states that certain construction is permitted on those that are developed. Section 210.1 defines dunes and states that most construction is prohibited on undeveloped dunes. Section 300.2 prohibits filling, removing or grading on dunes. Plaintiff contends that since the beach where his property is located is a developed barrier beach, any undeveloped dune on it must be subordinate to the beach so that the rules for developed beaches must apply to the dune. The CRMC, on the other hand, argues that the impact on an undeveloped dune cannot be ignored simply because the dune is part of a developed barrier beach. As with statutory interpretation, this Court cannot interpret regulations in a vacuum and should construe them so as to give effect to each. A refusal to use Section 210.1 and Section 300.2 in conjunction with the requirements of Section 210.2 would mean that only those undeveloped dunes located on undeveloped beaches would be protected, while undeveloped dunes located on developed beaches would be exempt from the protections of Section 210.1. Such an interpretation would clearly negate the intent of the regulations to control construction on all dunes regardless of the character of the beach on which a dune is located.
Plaintiff next suggests that Section 210.1, detailing the three developed dune areas in Rhode Island, is not intended to limit or prohibit construction on dunes other than these three. Contrary to Plaintiff's interpretation, Section 210.1 states that "developed dunes are limited to the areas of three developed barrier beaches." These three beaches are listed as Misquamicut Beach in Westerly, Coast Guard Beach in New Shoreham, and Sand Hill Cove Beach in Narragansett. Section 210.1 not only clearly limits construction to the dune areas listed, but also implies developed barrier beaches may contain undeveloped dunes. The designation of a barrier beach as developed does not preclude dunes located on that beach from classification as undeveloped dunes.
Plaintiff's claim that the CRMC improperly applied a special exception standard instead of a variance standard is similarly misguided. Finding of Fact #19 states that:
 "Consequently, filling, removing or grading activities are prohibited by the CRMP 300.2.B.1, on dunes adjacent to type 1 waters unless the primary purpose of the alteration is to preserve or enhance the feature as a conservation area or natural buffer against storms."
Plaintiff notes that a special exception, and not a variance, is required for a prohibited activity, and alleges that the CRMC, therefore, accepted his application for a variance while improperly applying a special exception standard. CRMP Section 120 Variances states that:
 "Applicants desiring a variance from a standard shall be granted an Assent only if the Council finds that the following five criteria are met:
 1) The proposed alterations conform with applicable goals and policies in Parts Two and Three.
 2) The proposed alteration will not result in significant environmental impacts of use conflicts.
 3) The standard will cause an applicant an undue hardship . . .
 4) The modification . . . is the minimum necessary.
 5) The undue hardship is not the result of any prior action of the applicant."
CRMP Section 130: Special Exceptions states that:
 "Special exceptions may be granted to prohibited activities to permit . . . Activities that . . . would otherwise be prohibited . . . If and only when the applicant had demonstrated that:
 1) The proposed activity . . . provides benefits to the public as a whole. The activity must be one or more of the following: (a) an activity associated with public infrastructure . . . (b) a water dependent activity that generates substantial economic gain for the state (c) an activity that provides access to the shore for . . . the public
 (2) All reasonable steps shall be taken to minimize environmental impacts and/or use conflicts
 (3) There is no reasonable alternative means of . . . serving the compelling public interest cited."
The language of Sections 120 and 130 demonstrate that the two standards have substantively different goals. While Section 120 aims to minimize environmental impact and individual hardship for private landowners, Section 130 excludes any activities that do not serve a "compelling public interest." Therefore, it is unlikely that a special exception would be granted to a private landowner wishing to construct a dwelling for exclusively private use.
Plaintiff's claim that the CRMC improperly applied special exception standards to his application is, to some extent, an issue of his own making. Plaintiff was aware early in the process that a special exception would be required. The CRMC repeatedly asked the Plaintiff to file for a special exception rather than for a variance. Plaintiff refused, probably because the private nature of his proposed building project would have made it likely impossible for him to meet the special exception standard. Plaintiff, however, may not choose the standards he must meet. Plaintiff wished for the CRMC to apply a variance standard to a project that required a special exception. Wishing, however, does not make it so.
In any case, the CRMC did in fact consider Plaintiff's application under a variance standard. The travel of this case demonstrates that the CRMC recognized that a variance was inappropriate for Plaintiff's application, and decided nevertheless to give Plaintiff the benefit of the doubt and consider his request. The CRMC simply found that Plaintiff did not meet even this lower variance standard. Consequently, the CRMC did not ever reach the issue of whether Puchalski's application to build on a dune would meet the special exception burden of proof. If Plaintiff was unable to meet the lower variance standard, then Plaintiff would certainly have been unable to meet the higher special exception standard.
3. Clear Errors of fact
Plaintiff disagrees with the CRMC as to Findings of Fact 31 (stating that the proposed ISDS posed a risk for leaching effluent onto the beach and into tidal waters), Fact 32 (stating that the ISDS would be severely damaged during a winter storm event), Fact 38 (stating that the proposed construction would destabilize the dune), Fact 42 (stating that the proposed alteration to the dune would heavily impact erosion and deposition along the beach and tidal water) and Fact 43 (stating that the proposed alteration would significantly impact plant and animal life). Plaintiff argues that Finding of Fact 31 is based on erroneous assumptions by CRMC staff, and that the CRMC staff biologist was incompetent to testify as to Finding of Fact 32. Plaintiff further argues that Finding of Fact 38 misrepresented the testimony of Plaintiff's own witness and that Findings of Fact 42 and 43 are not based on credible evidence. The disagreements as to Findings of Fact 31, 32, 42 and 43 stem from the differing opinions of Plaintiff's witnesses and CRMC staff. The CRMC heard and considered all of the evidence and testimony offered by both staff and Plaintiff's witnesses. In weighing the credibility of witnesses, the CRMC chose to believe staff witnesses. The CRMC chose to give less weight to Plaintiff's witnesses, one of whom was Plaintiff's wife, Sandra Puchalski. The CRMC clearly acted within its authority when it gave more weight to staff witnesses. As set forth above, the Court must defer to the CRMC on questions of fact so long as there is any credible evidence to support the CRMC's position. There is ample evidence on the record to support CRMC's findings of fact.
After review of the entire record, the Court finds that the decision of the CRMC did not constitute an error of law and was supported by the reliable, probative and substantial evidence of the record. The decision of the CRMC is affirmed. Counsel shall submit an appropriate judgment for entry in the Court.
[1] Though the appeal was filed in this Court in 1993, the case remained inactive until a show cause notice for lack of prosecution was filed by the Court on December 17, 1999.
[2] Plaintiff has obtained the necessary zoning approval from the Charlestown Zoning Board of Review for a front yard setback variance permitting Plaintiff to build fifteen feet from Charlestown Beach Road, instead of thirty feet.
[3] Following this hearing, CRMC staff underwent a major turnover. CRMC Executive Director Grover Fugate stated that he sent the new staff on additional site visits in order to be sure that the staff was making the correct decision on Puchalski's application. See July 29, 1993 transcript at 5-15.
[4] Based on the CRMC Subcommittee's findings of facts, other problems such as erosion on the site and the presence of an undeveloped dune suggest that a switch from an ISDS to an Incinerator toilet would not have changed the outcome of the CRMC's decision.